RAYMOND H. FORTIER *v.* NEWINGTON
GROUP, INC., ET AL.
(11257)

O'CONNELL, HEIMAN and SCHALLER, Js.

Argued January 19—decision released March 2, 1993

*Walter A. Twachtman, Jr.,* for the appellant (plaintiff).

*Kenneth Rosenthal,* with whom, on the brief, were *Marc A. Wallman* and *David R. Schaeffer* for the appellee (named defendant).

HEIMAN, J. The plaintiff appeals from the trial court's judgment rendered in favor of the named defendant in this interpleader action.[1] On appeal, the plaintiff asserts that the trial court improperly found that no meeting of the minds existed between the plaintiff and the defendant and, therefore, the trial court failed to interpret and reconcile an option agreement in light

---

[1] The plaintiff brought this action praying for a judgment of interpleader requiring the plaintiff and the named defendant to plead their claims to money in the hands of the other defendant, Dow and Condon, Inc. (stakeholder). The stakeholder, a real estate brokerage company that held Newington Group's $45,000 deposit in escrow was impleaded as a party defendant to give the court authority over the fund. The stakeholder is not a party to this appeal. We will refer to Newington Group, Inc., as the defendant in this opinion.

of (1) the standard rules of contract interpretation, (2) the case law regarding the interpretation of option agreements, (3) the surrounding circumstances at the time the option was executed, (4) four utility easements needed to allow for the proper functioning of the building which was the subject of the sale, which easements are a benefit to the property and not an encumbrance, (5) the fact that the defendant (a) never exercised the option pursuant to its terms, (b) never sent notice to the plaintiff pursuant to the requirement of paragraph four of the contract, and (c) did not notify the plaintiff in a timely fashion, and (6) the fact that the notice of the existence of easements by the defendant's attorney was ineffective because (a) the option had expired and the parties had no further rights or responsibilities with regard to each other, (b) the notice was not timely given, and (c) the notice was not given in accordance with the provisions of paragraph four of the option agreement. We affirm the trial court's judgment.

The following facts are necessary for a resolution of this appeal. The plaintiff and the defendant attempted to enter into an option agreement on June 21, 1988, regarding the sale by the plaintiff of three parcels of commercial land and a building to the defendant. The form of option agreement that they attempted to execute was prepared by the plaintiff without the benefit of legal counsel.

The option agreement provided that it could be exercised at any time during the life of the option by the purchaser's giving written notice to the seller. The option further provided that upon the exercise of the option the parties would enter into a bond for deed, with a life of up to three months, and also provided that upon the execution of the bond for deed the purchaser "shall pay an additional deposit of two hundred fifty-five thousand dollars."

The option also contained a clause concerning the requirements of the state of the title to be conveyed.[2] On August 17, 1988, counsel for the defendant notified the plaintiff that a title search had disclosed that the property was subject to four easements, and made demand that the plaintiff either remedy the defects in title, or, alternatively, that he instruct the escrow agent to return the $45,000 deposit. Instead of meeting the demand, the plaintiff claimed that the title to the premises was of good record and insurable by a reputable title insurance company at standard rates. In support of this assertion, the plaintiff proved the issuance of a loan title insurance policy at standard rates for these premises. He also established that there had been no changes in the title subsequent to the issuance of the title policy. The title policy, as issued, noted four easements of record affecting the premises. The policy also provided that the exercise of any of the rights granted by these easements would not interfere with the use and enjoyment of the premises or with the use of the improvements then located on the insured premises. The plaintiff thus declined to remedy the defect or to instruct the escrow agent to return the deposit.

---

[2] The option agreement contained the following clause concerning the state of the title to be conveyed: "7. TITLE. The Premises shall be conveyed absolutely free and clear of all liens, easements, and encumbrances. Title is to be of good record and, [in] fact, merchantable and insurable by a reputable title insurance company at standard rates. Seller represents that it knows of no encumbrances. Upon execution of this Agreement Purchaser shall commence an examination of the title of the Premises and shall notify Seller of any defects in the title uncovered by said examination. In the event that defects in title are of such character that they may be remedied by legal action, such legal action shall be pursued with due diligence by Seller at its own expense, whereupon the time herein specified for full settlement by Purchaser shall thereupon be extended for the period for such prompt action. If at the time set for the closing of title, the Seller has not cleared title, Purchaser may elect to accept such title as Seller can provide without set-off or deduction in the purchase price; or terminate this Option Agreement, in which case the Option Price shall be returned to Purchaser within ten (10) days after a letter of termination shall have been delivered by Purchaser to Seller."

On February 5, 1992, the trial court in a memorandum of decision found that there was no meeting of the minds as to the quality of the title and therefore found that no contract existed. It rendered judgment in favor of the defendant for the return of the deposit after deduction of reasonable counsel fees and disbursements due to the stakeholder.[3] This appeal followed.

The defendant asserts that the trial court improperly found that no contract existed because there was no meeting of the minds as to the quality of the title to be conveyed and that this finding was clearly erroneous. The defendant disputes the trial court's finding that the first two sentences of paragraph seven, as to the quality of title to be delivered, are in conflict. We are not persuaded that the trial court's findings are clearly erroneous.

The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. *Harry Skolnick & Sons* v. *Heyman,* 7 Conn. App. 175, 178, 508 A.2d 64 (1986). On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. Id. "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ." (Citations omitted; internal quotation marks omitted.) *Kimberly-Clark Corporation* v. *Dubno,*

---

[3] See footnote 1, supra.

204 Conn. 137, 153, 527 A.2d 679 (1987). Since the case was tried to the court, the trial judge is the sole arbiter of the issues of weight and credibility. *Gorra Realty, Inc.* v. *Jetmore,* 200 Conn. 151, 160, 510 A.2d 440 (1986). We must give the evidence the most favorable reasonable construction to support the judgment. Id.; *Polverari* v. *Peatt,* 29 Conn. App. 191, 201, 614 A.2d 484, cert. denied, 224 Conn. 913, 617 A.2d 166 (1992). We may reject the trial court's factual finding only where we conclude that such finding was clearly erroneous. *Kimberly-Clark Corporation* v. *Dubno,* supra, 154. " 'That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go.' " *Berlin* v. *Commissioner,* 207 Conn. 289, 293, 540 A.2d 1051 (1988), quoting *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. *Hoffman* v. *Fidelity & Casualty Co.,* 125 Conn. 440, 443–44, 6 A.2d 357 (1939); *Zahornacky* v. *Edward Chevrolet, Inc.,* 37 Conn. Sup. 751, 753–54, 436 A.2d 47 (1981); see also *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.,* 159 Conn. 242, 249, 268 A.2d 391 (1970). "If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." *Hoffman* v. *Fidelity & Casualty Co.,* supra. " [A]n agreement must be definite and certain as to its terms and requirements.' " *Dunham* v. *Dunham,* 204 Conn. 303, 313, 528 A.2d 1123 (1987).

Our review of the evidence and the pleadings in the whole record convinces us that the trial court's factual findings as set out in the memorandum of decision are supported by the evidence and are not clearly erro-

neous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra. The trial court heard all of the evidence and had before it the option agreement that contained the contradictory language concerning the quality of the title to be conveyed. The trial court found with respect to the issue of the delivery of title, that the parties had not had a meeting of the minds, and, thus, effectively found that no enforceable contract existed between them.[4]

The plaintiff's reliance on cases discussing the interpretation of contracts is misplaced. The trial court properly found that no contract in fact existed. No interpretation of the document was necessary and the balance of the plaintiff's claims are thus moot.[5]

The judgment is affirmed.

In this opinion the other judges concurred.

[4] In light of our conclusion that the trial court properly found that no contract existed because of a lack of the meeting of the minds of the parties, we need not address the defendant's alternative ground that the escrow deposit be returned to it because the plaintiff must be bound by the unambiguous terms of the written contract that he himself drafted.

[5] The plaintiff's reliance on the Supreme Court's opinion in *Frank Towers Corporation* v. *Laviana,* 140 Conn. 45, 97 A.2d 567 (1953), is clearly misplaced. In that case, our Supreme Court was called on to interpret the phrase "free of all encumbrances." Id. Here, the phrase in paragraph seven went well beyond that by adding the terms liens and easements to the generic term "encumbrances."