[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs in this action are Rehoex Aussenhandel, a proprietorship in Germany, and its principal, Hans-Georg Hoffmann. The defendants are Grant CT Page 4142 Airmass Corporation (Grant), a corporation with its principal office in Stamford, and Bengt Johansson d/b/a Intercon Marketing (Intercon), a proprietorship located in Matthews, North Carolina. The product involved in this controversy is manufactured by Grant and is an air mattress equipped with pumps and air pockets to help bedridden patients avoid developing bedsores. The plaintiffs are import agents in Germany and Intercon was the export agent in this country for the Grant air mattress.
Rehoex and Hoffmann allege that the defendants (1) failed to manufacture and distribute to the plaintiffs the required quantity of mattresses; (2) unilaterally canceled a contract appointing plaintiffs the exclusive sales agent for Germany and two other countries; and (3) did business with another German importer in violation of their exclusive sales agency. They sued the defendants in a complaint containing claims of breach of contract, breach of the implied warranties of merchantability and fitness for a particular purpose, fraud, unjust enrichment, and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes 42a-110a et seq. The defendants filed answers generally denying the complaint. Intercon also filed a counterclaim against the plaintiffs, alleging that plaintiffs were obliged by the contract to import and sell a certain minimum number of air mattresses manufactured by Grant and had failed to do so.
The case was referred to Attorney Jane F. Donovan, an attorney trial referee, in accordance with General Statutes 52-434(a) and Practice Book 428 et seq. Hearings were held over the course of a number of days, after which the attorney trial referee filed her report containing a number of findings of fact. She found that: (1) the plaintiffs and Intercon met in Germany where they agreed that the plaintiffs would have the exclusive right to sell Grant air mattresses in Germany Austria and Yugoslavia; (2) the agreement was worked out by Hoffmann for the plaintiffs and Johansson for the defendants without benefit of counsel; (3) the agreement was signed by Rehoex and Intercon on February 10, 1987, with an effective date of March 15, 1987, and was "accepted and approved" by Grant on March 23, 1987; (4) the agreement was a binding contract but "was essentially a contract for the assignment of an exclusive dealership rather than a contract for the sale of goods;[1] (5) the plaintiffs subsequently obtained the approval of the air mattress by TUEV, the German equivalent of the Underwriters Laboratories in this country; (6) the plaintiffs did not purchase as many air mattresses as all the parties had originally hoped, and it began to cost Grant more to manufacture the required "private brand" of mattress than the number of orders warranted, and hence Grant ceased doing business with the plaintiffs; (7) the contract did not require the plaintiffs to purchase any specific minimum number of mattresses; (8) on December 14, 1987 Intercon wrote to Rehoex to say that "This is to CT Page 4143 confirm that the subject agreement has been extended with the new expiration date to be June 30, 1988. Renewall (sic) of the agreement to be negotiated during the month of March 1988"; (9) the contract between the plaintiffs and the defendants expired on June 30, 1988, not June 30, 1989 as argued by plaintiffs, because no negotiations regarding renewal ever took place during March of 1988; and (10) the lists and projections that the defendants claim the plaintiffs failed to live up to were, according to the referee, "targets or goals" rather than "binding or enforceable quotas."
The attorney trial referee concluded that: (1) the plaintiffs could not recover against the defendants on any of their various theories, since the only promise made to them by the defendants was to be their exclusive sales agent in Germany and the other two countries; (2) this agency relationship expired on June 30, 1988, prior to the time when the defendants began to utilize another German entity, Uniroll, to distribute Grant products in Germany; (3) the plaintiffs' claim that they should be reimbursed for their efforts in obtaining "TUEV" laboratory approval as well as other promotional and marketing expenses was rejected because they were considered to be normal expenditures as part of the plaintiffs' exclusive sales agency; and (4) defendant Intercon's counterclaim was rejected because the plaintiffs had not obligated themselves to purchase a specific minimum number of air mattresses.
Pursuant to Practice Book 438, the plaintiffs moved to correct the report. They claimed that the findings of fact should be amended in a number of respects, because: (1) Intercon's letter of December 14, 1987 extended the agreement to June 30, 1989: (2) the agreement was automatically extended until June 30, 1989, because it had not been terminated ninety days before it was due to end; (3) by using Uniroll to distribute its products before the termination of the plaintiffs' exclusive sales agency, the defendants breached the contract; (4) plaintiffs were entitled to lost profits for sales that would have been made during the period that the exclusive agency relationship was still in force, but during which the defendants wrongfully ceased distributing the mattresses to them; (5) the defendants were unjustly enriched by plaintiffs' expenditures in their behalf; and (6) defendants' conduct constituted a violation of CUTPA.
The referee declined to make any corrections in her report, but did note that: (1) the December 14, 1987 letter from Intercon said the contract with the plaintiffs would terminate June 30, 1988, unless an agreement to extend was negotiated during March, 1988, and because no such negotiations occurred, the agreement ended on June 30, 1988; (2) the fact that Intercon continued to process some sales through the plaintiffs CT Page 4144 after June 30, 1988, the date the contract was terminated, is immaterial as the defendants were free after that date to use anyone, including the plaintiffs, to sell the Grant mattresses; (3) the complaint by Intercon in October, 1988 to the plaintiffs that they were "not living up to the delivery schedule as set forth in the contract" did not mean that Intercon believed the contract was still in force, but rather represented an attempt to urge Hans-Georg Hoffmann, who had formed a relationship with a new business entity, to continue his best efforts to sell Grant products; and (4) Johansson's testimony that he did not want to ship the mattresses to any other importer in Germany until his formal termination letter, sent on the advice of his lawyer, was received by the plaintiffs was not inconsistent with the termination of the agreement on June 30, 1988.
The plaintiffs then filed exceptions to the report; Practice Book 439; which mirror their motion to correct and contend that: (1) the December 14, 1987 letter extending the contract to June 30, 1988 carried with it the automatic extension provision of the original agreement, and hence the arrangement with the plaintiffs did not terminate until June 30, 1989 since the agreement was not terminated ninety days before it was otherwise due to end; (2) the defendants used Uniroll to distribute its products prior to the formal letter of termination sent plaintiffs in November, 1988 by Intercon's lawyer, Kolvenbach; and (3) the defendants breached the contract by unilaterally attempting to terminate the contract prior to June 30, 1989 and plaintiffs suffered damages as a result.
The plaintiffs also filed objections to the acceptance of the report. Practice Book 440. Plaintiffs contend that: (1) the extension letter of December 14, 1987 did not cancel the automatic extension provision of the original February 10, 1987 agreement, and hence the exclusive agency of the plaintiffs did not expire until June 30, 1989; and (2) the conduct of the parties indicated that they believed the exclusive agency agreement with the plaintiffs was still in existence after June 30, 1988, and at least until November 29, 1988, when Intercon's lawyer wrote the formal letter of termination.
It should be noted at this point that this court's authority in reviewing an attorney trial referee's recommendations as to the facts of a given case is a limited one. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., CT Page 4145 716. Also, Wilcox Trucking. Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 425, 567 A.2d 1250 (1989), notes that "[i]n a contract action, findings of fact should be overturned only when they are clearly erroneous."
According to Bernard v. Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171
(1989), this court's task is to determine whether the conclusions of fact and law "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. This procedure appears to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record those facts are clearly erroneous. . . ." (internal quotation marks and citations omitted.) Fortier v. Newington Group, Inc., 30 Conn. App. 505, 509, ___ A.2d ___ (1993).
Since the findings of fact find support in the record, the next issue is whether the referee's conclusion that the exclusive agency relationship between the plaintiffs and the defendants terminated on June 30, 1988 follows logically and legally from these findings. The conclusion was based on the finding that a further extension beyond June 30, 1988 was conditioned on "negotiations" which were to take place in March, 1988. The referee found as a fact that such negotiations did not take place, and concluded therefore that the agreement expired in June, 1988. In their motion to correct, exceptions and objections to the report, the plaintiffs persist in claiming that the agreement was extended to June 30, 1989. I believe the referee's interpretation of the extension letter and her comments on each of the plaintiffs' arguments to the contrary are sound. The case for all its days of trial and hundreds of pages of briefing really revolves around the interpretation of one document, the extension letter of December 14, 1987. The plaintiffs urge that the letter be construed to extend the agreement until June, 1989, but the referee concluded that any such extension was based on a condition precedent, that is, negotiations concerning a possible extension beyond June 30, 1988 to be conducted in March, 1988, which, she found as a fact, did not occur. It follows from this conclusion that the defendants did not breach the contract, commit fraud, or violate CUTPA. They did business with other entities in Germany only after the contract with the plaintiffs had CT Page 4146 expired. The fact that the defendants continued to some extent to use Rehoex and/or Hoffmann after the expiration of the contract was not, according to the referee, inconsistent with the prior cancellation of the agreement.
Although interpretation of the December 14, 1987 letter is the key to this case, it is true that the attorney trial referee heard a number of witnesses and was obliged to judge their credibility. For example, plaintiffs claim that at one point Johansson appeared to agree that the contract was still in force until his lawyer's letter of termination was sent in November, 1988. Yet on other occasions, according to the defendants, Johansson clearly testified that the agreement had expired in June, 1988. In addition, there was testimony concerning the difficulties the parties were having in selling the Grant air mattress and the intent behind the extension letter of December 14, 1987. As the Appellate Court noted in Citytrust v. Page, 28 Conn. App. 907, 908, 610 A.2d 197 (1992), "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings of facts and the drawing of inferences are all within the province of the trier of fact . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (internal quotation marks and citations omitted.)
Based on the standard of review in Dills v. Enfield, supra, I could not find that the conclusion that the contract had expired in June, 1988 was unwarranted, illegal or illogical, but rather I believe that, in the words of Practice Book 440, it was "properly reached on the basis of the subordinate facts found." Thus, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443.
Judgment is entered in accordance with the report of the attorney trial referee in favor of the defendants with respect to plaintiffs' complaint and in favor of the plaintiffs in connection with defendant Intercon's counterclaim.
Costs are not to be taxed to either party.
So Ordered.
Dated at Stamford, Connecticut, this 28th day of April, 1993. CT Page 4147
William B. Lewis, Judge