[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The first of the above captioned actions seeks monetary damages for the alleged breach of a lease dated on or about July 15, 1988, between the plaintiff, Norwalk Twin Towers, Inc, as lessor, and the defendant, the law firm of Davidson Naylor, a/k/a Davidson, Naylor Leepson, a/k/a Davidson, Driscoll and Naylor, as lessee. The second of the three actions seeks to set aside an alleged fraudulent transfer of property located at 260 Ridge field Road in Wilton, from Naylor to his wife, Mary Ellen Naylor. The third action seeks the same relief with respect to a conveyance from Driscoll to his wife, Ulla A. Driscoll, of property located at 75 Ledgewood Drive in Weston. Mrs. Naylor and Mrs. Driscoll were added as defendants and all three proceedings were consolidated for trial.
The first action, which involves a claim of breach of lease, contains three counts. The first count is directed against Davidson Naylor, a/k/a Driscoll, Naylor Leepson, a/k/a Davidson, Driscoll and Naylor, law partnerships, for breach of a ten year lease, which commenced January 1, 1989, and involved approximately 13,884 square feet of a commercial office building at 535 Connecticut Avenue in Norwalk, also known as Norwalk Twin Towers, for use as offices for the law firm. The plaintiff alleges that the defendant lessee took possession of the premises, failed to pay any rent when due, and was subsequently evicted in May of 1990, as a result of a summary process action. Plaintiff claims that it sustained damages of approximately $2,630,000 as a result of this breach of the lease. CT Page 8406
The second count of the first action is against the three individual attorneys, Robert M. Davidson, James P. Driscoll and Howard B. Naylor, Jr., as guarantors of payment of rent due under the lease. The third count of the complaint is directed against the individual partners of the partnership, and claims that all four partners, Davidson, Driscoll, Naylor and Peter L. Leepson, are jointly and severally individually liable for the debts of the partnership.
In the first action, the defendant partnership Davidson Naylor, and the individual defendants, Davidson and Naylor, filed an answer admitting that the partnership Davidson, Driscoll Naylor executed the lease in question, and took possession of space at the subject premises. They also agreed that the partnership did not pay any rent on January 1, 1990, when rent was first due, or thereafter. Davidson and Naylor also conceded that they signed guarantees of the lease. These defendants, however, filed a special defense claiming that plaintiff had breached certain provisions of the lease by failing to rent the amount of square feet of space specified in the lease, and that plaintiff also failed to provide certain services, including electricity, as promised. In addition, these defendants contend that plaintiff fraudulently represented that it would rent other space in the subject building to other tenants and had failed to do so, as a result of which the building was alleged to be virtually empty and "a joke in the community and region."
Driscoll filed an answer, special defenses, and a cross claim in the first action in which he agreed that the partnership, Davidson, Driscoll Naylor, took possession of the leased premises at some point in 1988, but denied that he was a tenant under the lease, or that he was obliged under the guaranty for unpaid rent. In the special defense, Driscoll alleges that on or about March 31, 1989, the partnership of Davidson, Driscoll Naylor was dissolved and was succeeded by the partnership of Davidson, Naylor Leepson, which he alleges is liable under the lease. The cross claim is directed against Driscoll and Naylor as individuals, and against the partnership of Davidson Naylor, asserting that these defendants had agreed to indemnify and hold him harmless from any obligations under the subject lease.
In Leepson's answer to the first action, he admits that at one point in time he was a general partner of Davidson, Naylor Leepson, but claims that the lease at issue was with the CT Page 8407 predecessor firm of Davidson, Driscoll Naylor. Leepson also filed a special defense claiming that he entered into the law partnership of Davidson, Driscoll Naylor only after the lease was executed in July of 1988, that he left the partnership and vacated the subject shortly thereafter, and that any liability he might have to plaintiff may only be "satisfied out of partnership property pursuant to General Statutes Section 34-55."[1]
As to the second and third of the above captioned actions, both Driscoll and Leepson deny that the transfer of their real property to their respective spouses is a fraudulent conveyance as alleged by the plaintiff.
On January 25, 1991, the plaintiff filed a motion for a prejudgment remedy in the Housing Session of this court, where the breach of lease action was originally brought. The court, Leheny, J., in a memorandum of decision dated April 16, 1991, docket no. 9101-1927, granted plaintiffs application for attachment and garnishment of any real or personal property belonging to the individual defendants, Davidson, Driscoll and Naylor, and also as to Driscoll's real property at 75 Ledgewood Drive in Weston, in the amount of $1,750,000, but denied the request as to defendant Leepson, except as to his interest, if any, in assets of the partnership. This decision regarding Leepson was appealed by plaintiff, and subsequently affirmed in Norwalk Twin Towers, Inc. v. Davidson and Naylor et al., 26 Conn. App. 940,601 A.2d 568 (1992).
All three cases were referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes 52-434(a) and Practice Book 428 et seq. The referee conducted a trial over the course of four days, and then filed a report containing a number of findings of fact, including: (1) that the lease dated July 15, 1988 was for a period of ten years, and was between Norwalk Twin Towers Associates, as lessor, and the law firm of Davidson, Driscoll Naylor, as lessees; (2) that Davidson, Driscoll and Naylor each individually guaranteed payment of rent due under the lease; (3) that the lessees took possession of the premises on or about November 23, 1988, and Leepson became a member of the firm approximately one week later; (4) that on March 14, 1989, Norwalk Twin Towers Associates became the named plaintiff, Norwalk Twin Towers, Inc., and a modification agreement dated on or about March 22, 1989, was signed between plaintiff and the partnership, Davidson, Driscoll Naylor, changing the date for the commencement of rent payments CT Page 8408 to January 1, 1990, but such agreement did not impose any new requirements on the partnership; (5) that Driscoll ceased to be a member of the partnership in March of 1989, and left the premises, at which point the firm's name was changed to Davidson, Naylor Leepson for about nine months, until December 31, 1989, when Leepson left and the firm became known as Davidson Naylor; (6) that the lessee did not pay the rent when due and was evicted in May of 1990; (7) that the lease provided that in the event of default in the payment of rent, the lessor could recover the difference between the amount of rent that would have been paid over the course of the lease, and the amount realized by reletting the premises, plus interest, attorney's fees, and the cost of recovering and reletting the premises; (8) that the amount of rent payable under the lease was approximately $3,190,000, but plaintiff had relet the premises to other tenants for a total rent of about $1,904,000, less expenses, commissions and legal fees of approximately $56,000; (9) that Driscoll was served with process in the action for breach of lease on or about February 1, 1991, and on March 1, 1991, he conveyed his interest in 75 Ledgewood Drive in Weston, his residence, to his wife, Ulla A. Driscoll, with a deed reciting a consideration of $175,000; (10) that Driscoll did not receive any consideration from his spouse for the transfer of the realty, nor did she know of the conveyance for a period of time thereafter, although she was aware of her husband's financial problems; and (11) that Naylor transferred his one half interest in 260 Ridge field Road in Wilton, to his wife, Mary Ellen, on November 2, 1990, but she provided consideration for the transfer in that she gave a creditor of her husband's law firm a mortgage on her interest in the family home, and then became personally liable for a portion of her husband's law firm's debt, and also that this transfer took place before commencement of plaintiffs suit against Naylor.
The attorney trial referee concluded: (1) thatPublic Act 91-297, 13, adopted the Uniform Fraudulent Transfer Act, General Statutes 52-552a, which became effective on October 1, 1991, after the alleged fraudulent transfers by Naylor and Driscoll, and therefore General Statutes 52-552 was applicable to these cases;[2] and (2) that an allegation of fraudulent conveyance must be proved by clear and convincing evidence. Mitchell v. Mitchell, 31 Conn. App. 331, 337, 625 A.2d 828 (1993); (3) that plaintiff proved it had mitigated damages in a proper fashion, and sustained damages of $1,308,917, less $52,065 for a rent deposit retained by plaintiff, for total damages in the amount of $1,256,852, for which the partnership of Davidson, Driscoll CT Page 8409 Naylor, and/or its successors, were liable to the plaintiff; (4) that Davidson, Driscoll and Naylor, as individuals, were personally liable for this amount as partners of the lessee partnership, and also as guarantors under the lease; (5) Leepson was liable to the plaintiff, but only to the extent of his interest in the partnership, pursuant to General Statutes 34-55; (6) that the modification agreement did not materially change the lease, and therefore did not discharge Driscoll from his liability to the plaintiff under such lease; (7) that plaintiff failed to prove by clear and convincing evidence that Naylor fraudulently conveyed his interest in his realty to his wife, but did prove by clear and convincing evidence that Driscoll had done so; (8) that Driscoll failed to prove his cross claim that the other defendants had agreed to indemnify and hold him harmless from any liability under the lease; and (9) that Davidson and Naylor had failed to prove their special defense that the plaintiff had breached the lease.
Neither the plaintiff, the partnership of Davidson Naylor, nor Davidson, Naylor or Leepson as individuals, challenged the attorney trial referee's findings, conclusions and recommendations, and after review thereof, judgment may enter in accordance with the referee's recommendations as to those parties. Driscoll, however, pursuant to Practice Book 438, moved to correct the report. He contended that the findings of fact by the referee should be corrected, among other ways, to reflect the facts: (1) that he did not know of the change of ownership of the building to the plaintiff, Norwalk Twin Towers, Inc., or that a modification agreement had been entered into; (2) that the partnership of Davidson, Driscoll Naylor was terminated in February of 1989, when his interest in the partnership ended, and the partnership became Davidson, Naylor Leepson which, as the successor partnership, became responsible for the lease; (3) that the plaintiff did not prove that it had taken proper steps to mitigate damages after the defendants vacated the premises; (4) that plaintiff rented additional space to new tenants at a discounted rate and as a result is barred from seeking damages; (5) that the sale of the building by plaintiff in September, 1991, prevents plaintiff from collecting for breach of the lease; (6) that the amount of damages was overstated by over $400,000 due to failure to credit certain rent payments by another tenant; (7) that he did not sign or guarantee the lease after it was modified in March of 1989, and he was released from all liability on the old lease because the modification resulted in a novation; (8) that Ulla A. Driscoll had made substantial payments on behalf CT Page 8410 of and for the benefit of her husband over the years of their marriage, for taxes and loans, among other purposes, that she did not know of her husband's law firm's financial difficulties, and she did not have fraudulent intent in accepting her husband's interest in the Weston realty; and (9) that plaintiff failed to prove that the transfer of the realty to his wife was motivated by fraud or an intent to hinder his creditors.
The referee filed a comprehensive reply to each of Driscoll's requests to correct the original report but, in a later brief, Driscoll withdrew his objections to the referee's recommendations except for those involving the alleged fraudulent transfer. Accordingly, this court will only refer to the portion of the referee's response to the motion to correct that relates to the transfer of Driscoll's residence at 75 Ledgewood Drive in Weston, to Ulla A. Driscoll, with whom he was living at the time of the transaction. The referee summarized his findings by restating the factors which he relied on in concluding that Driscoll's transfer of his interest in the realty was fraudulent: (1) that on February 1, 1991, Driscoll was served with process and put on notice that the plaintiff was seeking a prejudgment remedy of attachment of his realty; (2) that on March 1, 1991, Driscoll executed a warranty deed of the property to his wife, Ulla, which recited consideration of $175,000; (3) that Driscoll did not inform his wife of this transaction, seek her consent, or deliver the deed to her after recording; (4) that there was a lack of contemporaneous consideration as Mrs. Driscoll did not pay any consideration to her husband at or near the time of the transfer; (5) that Mrs. Driscoll was aware of her husband's financial difficulties at the time of the transfer; (6) that at various times during their marriage, Mrs. Driscoll helped her husband to meet his financial obligations, but did not do so "at or near the time of the transfer"; (7) that Mrs. Driscoll admitted she had no expectation of being repaid by her husband; (8) that Driscoll testified "that there were creditors with whom he was not current at the time of the transfer"; (9) that Driscoll had "limited, if any, assets"; (10) that Driscoll admitted that the scheduled hearing on the prejudgment remedy application was the precipitating factor in the transfer to his wife; and (11) "James Driscoll did not offer credible evidence that there was a formal, or otherwise binding, preexisting `debt' of $175,000 owed by him to his wife, Ulla, that was being satisfied by the transfer of his interest in the two properties in issue."[3]
CT Page 8411
Driscoll filed exceptions to the referee's report pursuant to Practice Book 439, in which he contended that the referee had made certain findings without supporting evidence, and that he failed to find certain facts that were admitted or undisputed. However, the file does not reveal that he annexed to his exceptions the required transcript.[4] In addition, the plaintiff asserted that a transcript had not been filed with the exceptions, which was not contradicted by this defendant. The court reporter's office also confirms that a transcript of the trial before the referee was not ordered.[5]
This court's authority in reviewing an attorney trial referee's recommendations as to the facts of a given case is a limited one in any event. As our Supreme Court held in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989): (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716.
According to Bernard v. Gershman, 18 Conn. App. 652, 656,559 A.2d 1171 (1989), this court's task as a general proposition is to determine whether the conclusions of fact and law by the referee "are legally and logically correct and whether they find support in the facts found by the referee." Practice Book 440. This procedure appears to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous . . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous . . ." (Internal quotation marks and citations omitted.) Fortier v. Newington Group, Inc., 30 Conn. App. 505, 509, 620 A.2d 1321
(1993). CT Page 8412
Without a transcript, however, it is impossible for this court to determine whether, as Driscoll claims, the referee found certain facts without evidence, or failed to find facts that were undisputed or admitted. It therefore follows that the factual findings by the referee must stand uncorrected. Ruhl v. Fairfield, 5 Conn. App. 104, 106, 496 A.2d 994 (1985) (our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions"). Failure to file exceptions in the proper manner in effect constitutes a "waiver" of the right to "attack the subordinate factual findings contained in the report." Bernard v. Gershman, supra, 655.
Therefore, the only remaining issue is whether the referee's conclusion that Driscoll fraudulently conveyed his realty to his wife follows logically and legally from his factual findings. Id., 656. This conclusion was based on his findings of fact, which must remain unchallenged in the absence of a transcript.
Driscoll also filed objections to the acceptance of the report pursuant to Practice Book 440, which again challenge the referee's conclusion that Driscoll fraudulently transferred his interest in the Weston realty to Mrs. Driscoll in violation of General Statutes 52-552. Driscoll claims that this conclusion could not be reached based on the subordinate factual findings, and that the referee relieved the plaintiff of its burden of proof and transferred it to Driscoll.
I believe that the conclusion of fraud does follow legally and logically from the findings of fact. The referee in effect determined that Driscoll made the conveyance to his wife in order to avoid and hinder creditors; that Mrs. Driscoll knew her husband and the law firm were having financial difficulties; that Driscoll did not receive consideration from his wife; and that after the transfer Driscoll was not in a financial condition to pay his debts. These findings and conclusions meet the criteria for fraudulent conveyances set forth in Tyers v. Coma, 214 Conn. 8,11, 570 A.2d 186 (1990), where the court held that: "[t]he party seeking to set aside a conveyance as fraudulent bears the burden of proving either: (1) that the conveyance was made without substantial consideration and rendered the transferor unable to meet his obligations or (2) that the conveyance was made with a fraudulent intent in which the transferee participated." See also Tessitore v. Tessitore, 31 Conn. App. 40,42, 623 A.2d 496 (1993) (the first alternative was described CT Page 8413 as "constructive fraud" and the second as "actual fraud." "The party seeking to set aside the conveyance need not satisfy both alternatives." Tyers v. Coma, supra. Furthermore, the referee made note of "the usual indicia or badges of fraud" discussed in Zatorsky v. Sacks, 191 Conn. 194, 201, 464 A.2d 30 (1983), among which were a close relationship between the parties and a failing business at the time of the conveyance.
The referee indicated that "[t]here was no proof that Mrs. Driscoll knowingly participated in a knowingly fraudulent transaction," which would be essential for actual fraud. However, the referee concluded that the conveyance was made without substantial consideration, that "[t]here was ample evidence to support the findings that Mr. Driscoll was having trouble meeting financial obligations even before the transfer," and that Driscoll admitted "that as to some creditors, he was not current."
Driscoll argues also that the referee shifted the burden of proof to him, but this is not correct, as the report is replete with references to the obligation of the plaintiff to prove fraud by clear and convincing evidence, which is the burden of proof required by the fraudulent conveyance statute. In one finding the referee said that Driscoll "did not offer credible evidence" about the alleged preexisting debt, but I do not believe this is tantamount to a shifting of the burden of proof, but rather a comment that Driscoll's evidence on this point was insufficient in the referee's mind to raise any doubts about his finding of lack of consideration.
"Whether the conveyance in question was fraudulent is purely a question of fact," Tyers v. Coma, supra, and based on the standard of review in Dills v. Enfield, supra, I could neither find nor determine that the attorney trial referee's conclusion that the transfer of the Weston property to Mrs. Driscoll was fraudulent was an unwarranted, illegal or illogical one. To the contrary, I believe that, in the words of Practice Book 440, his recommendations were "properly reached on the basis of the subordinate facts found." Thus, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. Practice Book 443.
Therefore, judgment is entered in accordance with the report of the attorney trial referee in favor of the plaintiff Norwalk Twin Towers, Inc. in the first captioned action as follows: (1) a CT Page 8414 judgment of $1,256,852 enters against the partnership Davidson, Driscoll Naylor, and its successor partnerships, and against the individual partners thereof, viz., Davidson, Driscoll, Naylor and Leepson, but confined as to Leepson only to his interests, if any, in the partnership Davidson, Naylor Leepson, and its successors; and (2) the individual defendants, Davidson, Driscoll and Naylor, are held to be personally liable for these amounts based on their personal guarantees, and their status as partners in Davidson, Driscoll Naylor, and/or its successor partnerships.
In the second case, judgment is entered in favor of the defendant Naylor, and in the third case, judgment is entered in favor of the plaintiff and against the defendant Driscoll, whose conveyance of property at 75 Ledgewood Drive in Weston, to his wife, Ulla A. Driscoll, is found to be fraudulent and is therefore set aside, vacated and declared null and void.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 14th day of October, 1993.
William B. Lewis, Judge