[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was heard as to the defendant, Martin S. Stillman. This case was not heard as to the defendant, George R. Recck, which proceeding has been stayed.
The evidence and testimony show that the defendant, George R. Recck, applied for and received a loan from the plaintiff, FirstCityBank ("the bank"), in the amount of $50,000.00. Recck signed an unsecured note dated July 30, 1990. The note became due and payable on December 14, 1990, and Recck failed to make full payment.
In a letter to the bank dated July 26, 1990, the defendant Martin S. Stillman, at Recck's request, informed Mr. Manning, the bank's president, that he was an attorney handling a land sale contract for Recck, and that he would withhold $50,000.00 of the proceeds due Recck for payment to FirstCityBank.
When he wrote the letter, Stillman believed that the bank had already loaned Recck the money, and that he was merely informing the bank of Recck's request that any proceeds from the sale should be disbursed to the bank. Stillman did not tell the bank's president that he would guarantee the loan to Recck, and never signed a loan application or promissory note relating to the dealings between the bank and Recck. Ultimately, Mr. Recck was not due any proceeds from the land sale mentioned in Stillman's letter to the bank.
On December 3, 1991, the bank filed suit against Recck and Stillman for failure to repay the loan. Because Recck filed a Chapter 7 Bankruptcy petition on June 30, 1993, the court CT Page 11112-A granted a stay of the proceedings as to that defendant on September 16, 1993. (Pittman, J.). In the second count of the complaint, the bank alleges that it relied on Stillman's letter in making the decision to loan $50,000.00 to Recck. The bank alleges that Stillman guaranteed that the bank would receive payment of the loan, and, therefore, Stillman is liable to the bank for the full amount.
Based on the evidence and testimony presented, this court finds that no contract existed between the bank and Stillman. The existence of express and implied contracts "depend[s] on actual agreement." Coelho v. Posi-Seal InternationalInc., 208 Conn. 106, 111, 544 A.2d 170 (1988). "In order for an enforceable contract to exist, the court must find that the parties' minds had truly met." (Citations omitted.)Fortier v. Newington Group, Inc., 30 Conn. App. 505, 510,620 A.2d 1321 (1993). "If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." Id.
Stillman did not know that the loan to Recck had not yet been made when he wrote the July 26, 1990 letter. Mr. Manning, the bank's president, admitted that he could not recall telling Stillman that the bank would rely on the letter, and Stillman stated that if he had known the bank would rely on his letter, he would not have written it. The bank's attorney, a member of the loan committee, expressed his belief, based on the Loan Committee's policy, that the bank had committed to Recck before the bank had received Stillman's letter.
By his July 26, 1990 letter, Stillman did not intend to form a contract for repayment of the loan to Recck. He merely indicated that when the real estate was transferred from its owner to the State of Connecticut, he would withhold $50,000.00 of the proceeds due Recck and pay that amount to the bank. At the time, Stillman believed that Recck would ultimately receive proceeds from the transfer, and could not know that in fact Recck would receive no proceeds.
Stillman did not receive any proceeds from the loan made by the bank to Recck nor did he receive any legal fee for service to the plaintiff bank. Further, Stillman did not sign any loan application, co-sign agreements, guarantees, or the CT Page 11112-B promissory note executed between Recck and the bank.
Because evidence and testimony demonstrate that there was no meeting of the minds between Stillman and the bank, no contract for repayment of the loan existed between them.
Stillman is not liable to the bank under the doctrine of promissory estoppel. Although a promise is generally not enforceable unless it is supported by consideration, Connecticut has recognized the "development of liability in contract for action induced by reliance upon a promise, despite the absence of common-law consideration normally required to bind a promisor; see Restatement (Second) Contracts 90 (1973)." (Citations omitted.) D'Ulisse-Cupo v. Board of Directors of Notre DameHigh School, 202 Conn. 206, 213, 520 A.2d 217 (1987). Section 90 of the Restatement (Second) of Contracts states that under the doctrine of promissory estoppel, `[a] promise which the promisor should reasonably expect to induce action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" Id.
"A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." Id. "Thus, a promisor is not liable to a promisee who has relied on a promise if, judged by an objective standard, he had no reason to expect any reliance at all." Id.
Stillman's statements were no more than representations indicating that the defendant intended to pay the bank sometime in the future from proceeds to be received some time in the future for Recck. There is no evidence or testimony to prove that these representations were not made in good faith. Further these representations manifested no present intention on the part of the defendant to undertake immediate contractual obligations to the bank. At most, Stillman made representations concerning his expectation of the future payment to Recck which Stillman would then forward to the bank. The payment to the bank was conditioned on Recck receiving proceeds from a land transfer, but Recck ultimately did not receive any proceeds, and therefore, Stillman could not forward any proceeds to the bank on Recck's behalf.
The bank's argument that it relied to its detriment upon Stillman's representations is further refuted by the bank's CT Page 11112-C own counsel, a loan committee member, whose expressed belief was that the decision to approve the loan to Recck was made by the bank officers prior to receiving Stillman's July 26, 1990 letter.
Stillman maintained that he did not know that Recck had not yet obtained the loan, and that he did not know that bank officers would rely on his letter to approve Recck's loan. The bank's president could not recall discussing the loan with Stillman. Stillman, therefore, had no reason to believe that the bank would rely on his letter. The representations by Stillman were insufficiently promissory or definite to support contractual liability.
Stillman did not negligently misrepresent the facts to the bank. To the extent that the plaintiff has implicitly in its complaint and post trial brief, or expressly at trial, alleged negligent misrepresentation, the court finds that the testimony and evidence presented do not support such a claim.
Connecticut "has long recognized liability for negligent misrepresentation." D'Ulisse-Cupo v. Board of Directors ofNotre Dame High School, supra, 202 Conn. 217. "[E]ven an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." Id.
The governing principles are set forth in similar terms in [section] 552 of the Restatement Second of Torts (1979): `One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.'"
Id. 217-18.
Stillman's testimony was that Recck called him, told him that he owed $50,000 to the bank, and requested that Stillman withhold that amount from proceeds due to Recck from the sale of real estate located in Rocky Hill, Connecticut Recck asked Stillman to communicate this to the bank, which Stillman did.
The bank's president testified that he did not recall discussing the actual loan with Stillman. It was not Stillman's duty or business to know the details of the relationship between Recck and the bank. Stillman merely agreed to send proceeds CT Page 11112-D from an entirely separate deal to the bank. As it turned out, Recck did not receive any proceeds, but Stillman was not in a position to know that on July 26, 1994. Stillman testified that if he knew on July 26, 1990, what he learned subsequent to that date, he would have handled the matter differently, but it would have been impossible for him to know the outcome of the land transaction before it occurred. Stillman did not unconditionally promise to pay the bank $50,000. He informed the bank that he would send $50,000 from Recck's land sale proceeds. Ultimately, there were no proceeds for Recck. Stillman stated the truth to the best of his ability at the time, therefore, cannot be held responsible on a count of negligent misrepresentation.
Based on the evidence and testimony, the plaintiff bank has not established facts and conditions requisite for recovery against Stillman. The bank has failed to show the existence of a contract with Stillman, has failed to establish a claim based on promissory estoppel, and has failed to prove negligent misrepresentation.
Judgment is rendered for the defendant, Martin S. Stillman on Count II of the plaintiff's complaint.
LEONARD W. DORSEY STATE TRIAL REFEREE