[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Milton M. Schonberger, filed a revised complaint dated March 2, 1995, against the defendant, David Bodine. The plaintiff alleges that he invented a "tamper-proof packaging device called a tamper-evident indicator," and that on June 24, 1994, he signed a contract with the defendant regarding this product. The plaintiff further alleges that the contract provided that he would sell all his rights to the manufacturing and marketing of the product to the defendant for $60,000, payable in six monthly installments of $10,000 each, plus 5% of the net sales of the product. The plaintiff also states that the contract could be canceled by the defendant but only if done prior to July 15, 1994, and that the defendant did not attempt to cancel until approximately four months after that date. The plaintiff sought damages of $40,000, contending that the defendant had paid him only the first two installments of $10,000 each.
The defendant denied the material allegations of the complaint, and also filed two special defenses and a counterclaim. The special defenses claim that the plaintiff had made false and fraudulent misrepresentations regarding the product, and that there had been a failure of consideration. The first count of the two count counterclaim alleges a breach of contract because the plaintiff failed to produce the device promised in the contract between the parties. In the second count, the defendant claims that by making false representations, the plaintiff had violated General Statutes § 42-110b, the Connecticut Unfair Trade Practices Act (CUTPA).
This case was referred to Attorney Marylouise S. Black, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then filed her report containing the following pertinent findings of fact: (1) that the plaintiff was an inventor and had invented a tamper proof indicator strip; (2) that the plaintiff was in need of funds and was introduced to the defendant; (3) that before signing an agreement with the plaintiff, the defendant questioned the plaintiff as to the cost of manufacturing and marketing the product, since cost was a major concern of his; (4) that the defendant also questioned whether the tamper evident strips could be printed flexographically, and the plaintiff represented that it could be done in that manner; (5) that an agreement to sell all the plaintiff's rights and interests to the product was entered into[1] and the defendant, as purchaser, paid the first two of CT Page 8309 the six installments of the purchase price; (6) that the agreement provides, among other things, that a contract would be prepared "more fully detailing the agreement contemplated by the parties;" (7) that the defendant believed that "he had purchased a fully developed scientific product subject to reasonable expenses related to the flexographic manufacture of the tamper evident strip;" (8) that the plaintiff believed that the agreement was a "research and development" plan and that the defendant would be obliged to spend approximately $30,000 to $100,000 to develop manufacturing techniques including the proper printing process, as the product had not been previously marketed; and (9) that the plaintiff did misrepresent to the defendant that the tamper evident strip could be produced flexographically, but that such misrepresentation was not false or fraudulent but rather innocent as the plaintiff did believe his product could be printed flexographically.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the parties to the contract never had an understanding "as to the very basis of their agreement;" (2) the contract was not binding or enforceable because the parties never reached an agreement or meeting of the minds; (3) there was a misunderstanding by both parties of their respective obligations, the plaintiff believing that the defendant agreed to expend considerable sums in research and development, and the defendant believing that the product was essentially ready to be marketed; (4) the "innocent" misrepresentation by the plaintiff regarding printing flexographically did not warrant imposition of CUTPA damages; and (5) the plaintiff should reimburse or refund to the defendant the $20,000 he previously received from the defendant.
Subsequent to the rendering of the referee's report, the plaintiff withdrew his complaint, so the only issue in this case is the propriety of the referee's recommendation regarding recovery by the defendant on his counterclaim. As to this counterclaim, the plaintiff did not move to correct the referee's report pursuant to Practice Book § 438, nor did he file exceptions thereto as provided by Practice Book § 439. The plaintiff did, however, file objections to the report as authorized by Practice Book § 440.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court reiterated very recently in Elgar v. Elgar, 238 Conn. 839, CT Page 8310 848-49, 679 A.2d 937 (1996), that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) See alsoRomano v. Derby, 42 Conn. App. 624, 626, 681 A.2d 387 (1996) ("[t]he trial court, as the reviewing authority, may render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee").
Again, according to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." The second task is to ascertain whether "[t]he conclusions drawn therefrom were legally and logically correct." As stated inRomano v. Derby, supra, 42 Conn. App. 628, "[a]fter reviewing the transcript and testimony of the hearing, the trial court concluded that a sufficient basis existed in the evidence to support the attorney trial referee's findings and therefore concluded that judgment should be rendered for the defendant. We will not overturn these conclusions unless they are legally or logically inconsistent with the facts found."
As to the determination of whether there is support in the record for the factual findings of the referee, the file discloses, as indicated previously, that the plaintiff did not file a motion to correct or exceptions to the report. It follows therefore that the factual findings by the referee must stand uncorrected because a failure to file proper exceptions constitutes a "waiver" of the "right to attack the subordinate factual findings contained in the report." Bernard v. Gershman,18 Conn. App. 652, 655, 559 A.2d 1171 (1989). "[F]iling exceptions seeking corrections by the court preserves the excepting party's rights in this regard . . . A party's failure to conform to this procedure limits the reviewing court to CT Page 8311 determining whether the subordinate facts found by the attorney were sufficient to support the referee's ultimate factual conclusions." Blessings Corporation v. Carolton Chronic Convalescent Hospital, Inc., 7 Conn. App. 364, 366, 508 A.2d 829
(1986).
Moreover, as to the filing of objections by the plaintiff, "[s]ection 440, however, cannot be used to attack findings of fact." Iroquois Gas Transmission System v. Mileski, 43 Conn. App. 47,52, ___ A.2d ___ (1996). "Absent such a motion [to correct] and a subsequent exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." Id., 51.
Since the referee's findings of fact must stand unchallenged because of the absence of valid and proper exceptions, the sole remaining issue is whether her conclusion that the plaintiff must refund to the defendant the sum of $20,000 follows legally and logically from those facts. Bernard v. Gershman, supra, 18 Conn. App. 656; Practice Book § 440. The objection[2] by the plaintiff to the acceptance of the report centers around the conclusion by the referee that the contract between the plaintiff and the defendant should not be enforced because "there was no mutual assent based on an identical understanding of the terms and obligations of the contract," citing Bridgeport PipeEngineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 249,268 A.2d 391 (1970)("To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding of the parties").
The plaintiff claims that the Bridgeport Pipe case citedShulman v. Hartford Public Library, 119 Conn. 428, 433,177 A. 269 (1935), as authority for this proposition, but that Shulman
does not support it because the phrase "identical understanding" does not appear in the Shulman case. However, it is clear that the Bridgeport Pipe court believed that the Shulman case served as precedent for its holding. The latter case does refer to a contract being capable of different interpretations, and that to be binding, an agreement must be "so clear and definite as to have but one reasonable meaning." Id., 434.
The plaintiff also asserts that the intention of the parties is immaterial and that one should look solely to the language of CT Page 8312 the agreement, and that the agreement is clear that the plaintiff agreed to sell and the defendant agreed to purchase all the rights to the invention. The referee found as a fact that there had not been a meeting of the minds, because the plaintiff believed the agreement to be a research and development contract, and the defendant thought he was purchasing a product practically ready for marketing. "The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence." Fortier v. Newington Group, Inc., 30 Conn. App. 505,509, 620 A.2d 1321 (1993). That fact cannot be challenged by the plaintiff because of a lack of a motion to correct and of exceptions. Accepting the fact that there was no meeting of the minds, the referee's conclusion that the contract could not be enforced follows legally and logically.
Furthermore, "[i]n order for an enforceable contract to exist, the court must find that the parties' minds had truly met." Fortier v. Newington Group, Inc., supra, 510. "If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." Id.
Therefore, based on the standard of review in Elgar v. Elgar,
supra, 238 Conn. 848, the court finds that the referee's recommendations are not illegal or illogical. To the contrary, in the words of Practice Book § 440, her recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, nor any other sufficient reason for rendering the report unacceptable. See Practice Book § 443.
Accordingly, judgment hereby enters in favor of the defendant to recover from the plaintiff the sum of $20,000 on the first count of his counterclaim. Statutory costs shall be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 30th day of October, 1996.
William B. Lewis, Judge