BARBARA ZAHORNACKY *v.* EDWARD CHEVROLET, INC.

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1060

Argued April 20 – decided June 26, 1981

*Vincent R. Falcone,* with whom, on the brief, was *Robert L. Nowicki,* law student intern, for the appellant (defendant).

*Richard Damiani,* for the appellee (plaintiff).

DALY, J. This case involves the validity of a contract for the purchase of a limited edition 1978 Chevrolet Corvette coupe replica of the Indianapolis 500 automobile race pace car ("Indy 500"). Under protest, the plaintiff paid $16,645 plus sales tax for this car. She then brought suit claiming that under the original sales contract, which the defendant refused to honor, she was only required to pay the sticker price of $14,622.21 plus sales tax. After a trial to the court, judgment was rendered for the plaintiff in the amount of $2164.35, the difference between the sticker price and the price paid.[2] The defendant has appealed.

The underlying facts, which are not in dispute, are contained in the trial court's memorandum of decision. On September 22, 1977, the plaintiff went to the defendant's place of business and spoke with the defendant's salesman, Edward Trotta. She expressed an interest in purchasing a replica of the 1978 Indianapolis 500 pace car. The plaintiff, who had learned of Chevrolet's plans to market this car through trade magazines, showed Trotta a magazine featuring such an article. Trotta ageed to order the car for the plaintiff, despite the fact that he had not heard of it previously. He erroneously assumed that the "Indy 500" was Corvette's twenty-fifth anniversary model with numerous options and an "Indy Limited" package added. A purchase order for the twenty-fifth anniversary special with over $2500 in extras and an "Indy Package" was drawn up and signed by the parties. Since Trotta did not know the price of the "Indy Package" he told the plaintiff that she would pay whatever the price for this feature was on the dealer's invoice. The plaintiff made a down payment of $100 at that time. On October 3, 1977, she made an additional down payment of $400. At Trotta's suggestion, she also wrote to the car

---

[2] The amount would appear to be actually $2022.79.

manufacturer, explaining her desire to purchase the limited "Indy 500" and enclosing a $1000 check as a further deposit on the car.

On October 17, 1977, Chevrolet announced that a limited number of "Indy 500" cars would be manufactured. Only one of those cars would be allocated to each dealer. The defendant's one car was designated by the manufacturer as sold to the plaintiff.

Before the "Indy 500" arrived the twenty-fifth anniversary Corvette was received by the defendant. Although the plaintiff viewed this model, she expressed no interest in it, and the defendant at no time suggested that this was the car ordered for her. The defendant received the "Indy 500" in April, 1978. Trotta, claiming that the purchase order of September 22, 1977, was invalid because the price stated therein applied to the twenty-fifth anniversary model, refused to sell the "Indy 500" to the plaintiff for less than $16,645. At this time, the "Indy 500" cars were in great demand, and were selling for prices ranging from $22,000 to $25,000 each. The plaintiff felt that under the September 22, 1977 purchase order she was entitled to pay the sticker price of $14,622.21. A new purchase order was executed, however, and the plaintiff, under protest, paid $16,645 plus sales tax for the car. She then instituted this action to recover the difference.

The main issue to be resolved is whether the agreement of September 22, 1977, was a valid and binding contract. The defendant contends that it was not since there was no meeting of the minds on the essential terms of the contract.

It is a basic principle of contract law that in order to form a binding contract there must be mutual assent or a meeting of the minds. Where the parties appear to have agreed to the terms of the contract, but circumstances disclose a latent ambiguity in the meaning

of an essential word, this ambiguity going to the essence of the supposed contract, the result is that there is no contract. 17 Am. Jur. 2d, Contracts §§ 18, 22. "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." *Bridgeport Pipe Engineering Co.* v. *DeMatteo Construction Co.,* 159 Conn. 242, 249, 268 A.2d 391 (1970). "If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them." *Hoffman* v. *Fidelity & Casualty Co.,* 125 Conn. 440, 443–44, 6 A.2d 357 (1939).

The agreement of September 22, 1977, provided for the delivery of a 1978 Corvette with the twenty-fifth anniversary package and not the limited edition 1978 Corvette "Indy 500" contemplated by the plaintiff. Since the Corvette actually contracted for was not the one that the plaintiff wished to purchase, we do not find that the September 22, 1977 purchase order constituted a valid contract. Paragraph 3 of the terms and conditions of the purchase order, which states that "the purchaser shall pay any increase in price made by the manufacturer," does not, as the plaintiff contends, resolve the ambiguity. The sticker price did not represent an increase in the price of the car contracted for; rather, it was the price of an entirely different car.

The Uniform Commercial Code, General Statutes § 42a-1-206 provides that "a contract for the sale of personal property is not enforceable by way of action or defense beyond five thousand dollars in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter. . . ."

"The term 'personal property' embraces everything, not coming under the denomination of real estate, which is the subject of ownership and has an exchangeable value." *Austin* v. *Housing Authority,* 143 Conn. 338, 345, 122 A.2d 399 (1956). Unquestionably, a Corvette is personal property which comes within the terms of the statute. While the September 22, 1977 agreement contains a defined or stated price, it fails, for the reasons stated above, to "reasonably identify the subject matter." Since that purchase order fails to comply with either the general principles concerning contracts or the specific requirements of the UCC, it cannot be considered a binding contract. Since the September purchase order is invalid, the plaintiff is bound by the contract of April 4, 1978. The plaintiff paid the selling price set forth in this April purchase order, and therefore is entitled to no damages.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendant.

In this opinion SHEA and BIELUCH, Js., concurred.