The plaintiff claims to have made direct mailings, provided consulting services and furnished the rental of equipment at the request of the defendant who was conducting a political campaign (primary) for the Mayor's office in Bridgeport. It alleges a meeting on July 17, 1989 and that on July 21, it presented a written proposal on which the plaintiff made changes at the defendant's request and subsequently it faxed those changes to the defendant. It claims that on August 1, 1989 the defendant by telephone authorized it to proceed, as a result of which a meeting was had on August 7 and the plaintiff installed on August 7, 1989, six IBM compatible P.C.'s and provided the use of "Result" software in accordance with the written proposal. The defendant's answer is a denial of the complaint and by way of special defenses alleges: 1) that if the defendant was successful in CT Page 5692 the primary the plaintiff would be paid the full amount, however, if he was unsuccessful the plaintiff would be paid only its out-of-pocket expenses; 2) the goods and services claimed to be provided by the plaintiff were defective, non-delivered, only 5 PC terminals were installed, reports were not received as were not the follow-up letters, some of which were late, cards were also not received, no direct mailing provided, the system installation was late, database material was inoperative; and the plaintiff failed to work with the campaign manager; 3) any agreement of the plaintiff was with the campaign committee not with him personally.
The facts are found as follows: The defendant lost the primary election. The plaintiff's vice president Charles Schmitt had personal meetings with the defendant and gave him what he terms was a proposal for coordinating the telemarketing of the campaign, and direct mail production in the range of $9,000 to $12,000. The proposal contains certain rates and charges for each item sent or delivered. The proposal addressed to "Len," part of the defendant's given name, is unsigned by the plaintiff or the defendant. The defendant delivered a check drawn by the campaign treasurer to Charles Schmitt for $1,000.00. Thereafter the plaintiff provided direct mail letters to voters on which the defendant included his own handwritten statement and it did provide the defendant with some "Response Summery"[s] which were reports of the telemarketing. Thereafter, about the first week of September when the plaintiff did not receive expected payments, they stopped providing services. The plaintiff admits receiving the sum of $3,375.00 from the defendant or his campaign committee which they credited to the defendant's account. In fact the terminals promised for August 4th did not arrive until August 17th. At scheduled meetings with the defendant's workers, Charles Schmitt although slated to be there did not appear. The software for the terminals scheduled to arrive on a Monday did not arrive until Friday. Of the six terminals installed only five were operational, were unusable after the disks were exhausted, and the plaintiff stopped supplying the disks when it did not receive payment for bills submitted. The installation of the terminals and the arrival of the disks was not complete until August 21 which left only three weeks until primary date and minimized the effect of the computer data on the campaign.
It is evident that the arrangement of Charles Schmitt of the plaintiff, he felt was with the defendant personally and not with the campaign committee. The committee in the person of the Chairman Alteri did discuss and finalize the supply of consulting services and the supply of materials and services. Alteri dealt with what the plaintiff and defendant had discussed and managed its use. The letter intended as a contract is unsigned, however it was in fact acted upon by the parties and checks delivered to the plaintiff in accordance with its charges were signed by the campaign CT Page 5693 treasurer. The issue that presents itself is who are the parties to the contract. The defendant intended to bind the campaign committee, and the plaintiff addressed his letter to the defendant personally. The contract did not include the parties Charles Schmitt and the defendant intended. The letter resulted in an oral contract between the plaintiff and the campaign committee, resulting in no contract with the defendant and therefore no liability on his part.
 It is a basic principle of contract law that in order to form a binding contract there must be an offer and acceptance based on a mutual understanding by the parties. Bridgeport Pipe Engineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 249, 268 A.2d (1979); Zahornacky v. Edward Chevrolet, Inc., 37 Conn. Sup. 751, 754, 436 A.2d 47 (1981). The offer in the real estate agreement by the defendant to sell certain real property created a power of acceptance in the plaintiffs. See 1, Williston, Contracts (3d Ed. Jaeger) 51. Any qualification of or departure from the terms in which the offer was made by the offeror, however, invalidates the offer unless the offeror agrees to the qualification or departure. Ocean Insurance Co. v. Carrington, 3 Conn. 357, 362-63 (1820); cf. Randolph Construction Co. v. Kings East Corporation, 165 Conn. 269, 276, 334 A.2d 464 (1973); see also J. D. Kasper Associates v. Merrimac Association, Inc., 37 Conn. Sup. 712, 714, 435 A.2d 709 (1981).
Cavallo v. Lewis, 1 Conn. App. 519, 520.
In addition thereto a failure of consideration occurred in that services were provided late, material did not arrive on scheduled dates and was therefore not effective in the campaign for the length of time contemplated; the terminals were unusable after the disks ran out; Charles Schmitt did not appear to instruct thirty-five assembled workers and after the first week of September the plaintiff ceased to furnish or supply any material or advice. Clearly the plaintiff did furnish some services and some materials, on which its exhibit D claims to show a balance of $3,980.00 and which describes services provided which were outlined in the plaintiff's letter at fixed prices. Those services would be recoverable on the basis of reasonable value i.e. as a quantum meruit claim against the campaign committee. However the court has no evidence of the reasonable value of those services and is therefore unable to determine their value. Lastly the campaign committee is not a party to this suit.
Judgment may enter for the defendant, without costs. CT Page 5694