[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 17, 1993, the plaintiffs, Robert J. Nichols, Rupert Francis, Edward Dockray, Gregg Nolan and Vincent Smith acting through the plaintiff, Robert J. Nichols, Trustee, for a corporation to be formed, filed a five count amended complaint against the defendants, Roger B. Clark, Mary Anne Winschel, and Daniel D. Peck.[1]
Count one of the amended complaint alleges that on or about July of 1985, the plaintiffs, Nichols, Rupert Francis, Edward Dockray, Gregg Nolan and Vincent Smith (the plaintiffs) acting through the plaintiff, Nichols, as trustee for a cooperation to be formed, entered into an agreement with the defendants, Roger Clark (Clark) and Thomas J. Winschel, to purchase all rights, title, and interest of the defendants, Clark and Thomas J. Winschel, in a security firm known as Royal/Grimm Davis, Inc., including the assets and certificates of stock in said company.[2] On or about July 20, 1985 through July 23, 1985, the plaintiff, Nichols, as trustee entered into a written contract with the defendants for the purchase of the security firm for the sum of $200,000. At the time of the execution of the written agreement, the defendants accepted a deposit check in the amount of $20,000. CT Page 6721
Around late August, 1985, or early September, 1985, the plaintiff, Nichols as trustee represented to the defendants, Clark and Thomas J. Winschel, that he was desirous of consummating the transaction. Defendants, Clark and Thomas J. Winschel, however, refused to consummate the transaction.
On or about May 5, 1988, the defendants, Mary Anne Winschel and Daniel D. Peck (Peck), were appointed co-ancillary executors of the Estate of Thomas J. Winschel, in the Probate Court for the District of Fairfield, Connecticut. On February 3, 1989, the plaintiffs presented a claim to the administrator of the decedent's estate. The administrator filed notice of rejection of said claim on April 3, 1989. As a result of the breach of contract by the defendants, the plaintiffs sustained a financial loss.
In count two of the amended complaint, the plaintiff alleges that between May 8, 1995 and June 14, 1985, he and the defendants entered into an option to purchase the security firm known as Royal\Grimm Davis, Inc., including the assets and certificates of stock in such company. On or about August 20 and August 23, the plaintiff, Nichols, as trustee prepared a written contract to be executed by the defendants to purchase the aforementioned security firm for the sum of $200,000. The parties orally agreed to the purchase and sale of the aforementioned security firm and in consideration of the oral agreement; the defendants accepted a deposit check in the amount of $20,000. The parties agreed that the closing occur on or about August 15, 1985.
In late August, the plaintiff, Nichols, as trustee demanded that the defendants, Clark and Thomas J. Winschel, consummate their agreement to sell Royal/Grimm Davis. On or about September 18, 1985, the defendants advised the plaintiff that they have decided not to sell the security firm. On February 13, 1986, the plaintiffs presented a claim to the administrator of the decedent Thomas J. Winschel's estate. On April 3, 1989, the administrator filed notice of rejection of said claim. As the result of the breach, the plaintiffs have sustained a financial loss.
In count three of the amended complaint, which incorporates the factual allegations of count two, the plaintiffs allege that they relied on the promises, agreements and representations made by the defendants to their detriment. CT Page 6722
In count four of the amended complaint, which incorporates the factual allegations of count three, the plaintiffs allege that the defendants acted in an improper and fraudulent manner, with a willful, wanton and knowing disregard for the plaintiffs, causing the plaintiffs to suffer losses and damages.
In count five of the amended complaint, which incorporates the factual allegations of count four, the plaintiffs allege that the defendants, at the time of their agreement with the plaintiffs, represented intentions and facts to the plaintiffs which were untrue and upon which the plaintiffs relied to their detriment.
On March 25, 1994, the defendants, Mary Anne Winschel and Peck, and the defendant, Clark, filed separate answers to the plaintiffs' amended complaint.
This matter was heard before Attorney Trial Referee Norma S. Johnson on February 23, 1994, February 24, 1994, February 25, 1994 and May 25, 1994. On January 13, 1995, the Attorney trial referee issued her decision in which she made findings of fact; the referee also submitted her conclusions of law as to whether the plaintiffs were able to prove the claims made in the amended complaint.[3]
On January 27, 1995, the plaintiffs filed an objection to acceptance of the report pursuant of Practice Book § 440.[4] On April 10, 1995, the plaintiffs filed a motion to correct the Referee's report, which contained a request for additional findings of subordinate facts, pursuant to Practice Book § 438.[5]
On May 8, 1995, the defendants filed an objection to the plaintiffs' motion to correct. On December 4, 1995, the plaintiffs filed a memorandum in support of their objection to acceptance of the referee's report.
On December 7, 1995, the Attorney Trial Referee filed her response to the plaintiffs' request to correct the report. The Attorney Trial Referee denied all but one of the plaintiffs' request to correct and made no additional findings.[6]
On December 15, 1995, the plaintiffs asked for an extension of time to file exceptions and objections to the referee's report pursuant to Practice Book § 444. The motion was granted by CT Page 6723 the trial court, Levin, J., on January 2, 1996.
On February 5, 1996, the plaintiffs filed separate motions objecting to the acceptance of the referee's report and seeking exceptions to the referee's report.[7]
"[A]n attorney referee is simply a factfinder whose determination of the facts is reviewable in accordance with well-established procedures prior to rendition of judgment by the court." Seal Audio, Inc. v. Bozak, Inc., 199 Conn. 496, 502,508 A.2d 415 (1986). An attorney referee "[has] no power to render a judgment." Id., 502. Nevertheless, attorney trial referees are permitted to "express their views on questions of law. Practice Book § 434; Practice Book § 546g; Seal Audio, Inc. v.Bozak, Inc., supra, 509-10." Rostenberg-Doern Co. v. Weiner,17 Conn. App. 294, 299, 552 A.2d 827 (1989).
The supreme court in Cohn v. Hartford, 130 Conn. 699, 706-07,37 A.2d 237 (1944), defined "ultimate facts" as "those ultimate conclusions of fact which will enter immediately into and be determining elements in the judgment of the court. Conn. App. Proc., § 80. The determination of these facts often requires the application to the subordinate facts of principles of law, but the conclusion reached may be none the less a finding of an ultimate fact. Davis v. Margolis, 107 Conn. 417, 420,140 A. 823; Gowdy v. Gowdy, 120 Conn. 508, 510, 181 A. 462. Such findings of ultimate facts by a referee or committee are not necessarily conclusive but are reviewable, upon remonstrance to the report, to determine whether they are reasonable and properin view of subordinate facts found and the applicable principlesof law. Practice Book, § 172; Skarzynski v. Liquor ControlCommission, 122 Conn. 521, 526, 191 A. 98; Meserole v. LiquorControl Commission, 125 Conn. 104, 106, 3 A.2d 664." (Emphasis added.)
A party who fails to file a motion to correct waives "any right to attack the subordinate factual findings contained in the report. Seal Audio, Inc. v. Bozak, Inc., [supra, 199 Conn. 518];Kowalsky Properties, Inc. v. Sherwin-Williams Co., 7 Conn. App. 136,140, 508 A.2d 43 (1986); Ruhl v. Fairfield, 5 Conn. App. 104,106, 496 A.2d 994 (1985)." LiVolsi v. Pylypchuk, 12 Conn. App. 527,528, 532 A.2d 593 (1987). As to subordinate facts, "[c]orrections will not be made in the report unless a material fact has been found without evidence, there has been a failure to find an admitted or undisputed fact, or a fact has been found in CT Page 6724 such doubtful language that its real meaning does not appear. Practice Book § 173 [now 439]." Garofalo v. Argraves,147 Conn. 685, 687-88, 166 A.2d 158 (1960).
The "[f]ailure to file evidence in support of these claimsleaves the court powerless to make any correction in thefindings. Northeastern Gas Transmission Co. v. Warren, 144 Conn. 217,222, 128 A.2d 783." (Emphasis added.) Id., 688.
 I
The plaintiffs, in their request for exceptions to the Referee's Report, argue that there was error in the findings of fact in that: (a) the findings of fact were not supported by the evidence; (b) the findings of fact were highly selective and were taken out of context and against the weight of the evidence introduced at trial; and (c) the findings of fact omit material undisputed facts.
Practice Book § 439 states in pertinent part: "[a] party . . . must file with his exceptions a transcript of the evidence taken before the committee, except such portions as the parties may stipulate to omit." The plaintiffs filed exceptions to the report, after the referee declined to make the corrections set forth in his motion to correct.[8] "If the referee does not make the claimed corrections, exceptions must be filed in court. Practice Book § 173 [now 439]." Garofalo v. Argraves, supra,147 Conn. 687. "These exceptions must be accompanied by a transcript of the evidence taken before the referee, apart from such portions as the parties may stipulate to omit." (Emphasis added.) Id.
The plaintiffs did not file a complete transcript of the evidence taken before the referee, nor is there any indication that the defendants stipulated to omitting any part of the transcript. In McHugh Construction v. Hammermill Business Corp.,
Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 080843 (March 8, 1995, Lewis, J.) (see n. 1), the defendant filed a combined `objection/exception', but did not file a complete transcript with its exceptions. The court held that "the factual findings by the referee must stand uncorrected because, without a transcript, these findings cannot possibly be evaluated. Hence, the referee's report must be viewed as if no exceptions had been filed. A failure to file valid exceptions constitutes in effect a waiver of the right to `attack the CT Page 6725 subordinate factual findings contained in the report.' SeeBernard v. Gershman, 18 Conn. App. 652, 655, 559 A.2d 1171 (1989) (holding that a failure to file a motion to correct waived the right to challenge the referee's subordinate factual findings.)."
In Cunningham v. McEvoy, Superior Court, judicial district of Stamford, Docket No. 121399 (August 24, 1995, Lewis, J.), "[o]nly excerpts from the transcript of the evidence that was introduced at the trial were filed." The court noted that "Practice Book § 439 provides that the complete transcript of the trial must be filed unless the parties agree that only excerpts must be filed. The file does not indicate that any such agreement was reached." The court concluded that "it [was] impossible to discern if there was sufficient credible evidence in the record to sustain the referee's factual findings." Id. In Colon v. NewEngland Redemption of Connecticut, Superior Court, judicial district of Fairfield, Docket No. 292761 (August 15, 1995, Levin, J.), the court found that a referee's remark, if treated as a finding, could not be corrected where the defendants only submitted a partial transcript and there was no indication in the "court's file that the parties stipulated to omit any portion of the transcript." See also Schmaling v. Schmaling, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 124651 (February 28, 1995, Lewis, J.). "[W]ithout a transcript, the factual findings by the referee cannot possibly be evaluated. Gwinner v. Reelsharp USA, Inc., Superior Court, judicial district of Stamford Norwalk at Stamford, Docket No. 123030 (November 7, 1994, Lewis, J.)." Midrange Business, Inc. v.Cayton, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 312401 (September 28, 1995, Ford, J.).
In D.W. Van Dyke Co. v. Riverside Plaza, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 101367 (March 29, 1993, Lewis, J.), the plaintiff filed exceptions to the referee's report asking the court to correct the report, but submitted only excerpts from the transcripts. "The defendant moved that the exceptions be rejected because the complete transcript had not been filed, and no agreement had been reached regarding filing only a portion thereof." Id. The court denied the defendant's motion and allowed the plaintiff to file the remainder of the transcript. Id. See also Shippan PointAssociation v. McManus, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 119682 (March 23, 1993, Lewis, J.), aff'd, 34 Conn. App. 209, 640 A.2d 1014, cert. denied, 229 Conn. 923, 642 A.2d 1215 (1994). Judge Lewis, who CT Page 6726 decided the preceding two cases, also decided McHugh Constructionv. Hammermill Business Corp., supra, in which he held that the referee's findings must stand uncorrected on the grounds that the party challenging the referee's findings failed to file a complete transcript. See also Cunningham v. McEvoy, supra, andSchmaling v. Schmaling, supra. It is reasonable to conclude that Judge Lewis did not find any inconsistency in his rulings in these cases. Judge Lewis' reasoning, however, for allowing the plaintiffs in D.W. Van Dyke Co. v. Riverside Plaza, supra, andShippan Point Association v. McManus, supra, to submit a complete transcript after the defendants moved to have the exceptions rejected is not clear.
The plaintiffs failed to file a complete transcript along with their motion for exceptions as required by Practice Book § 439. For this reason the court cannot evaluate the findings of fact challenged by the plaintiffs in their motion and consequently the findings of the referee must stand uncorrected.
 II
The plaintiffs in their objection to acceptance of the referee's report contend that the trial referee erred by: (A) attempting to assume the function of the court and issue a ruling dismissing the plaintiffs' complaint; and (B) making recommendations for conclusions of law which are contrary to established law.[8]
 A
The plaintiffs argument that the trial referee attempted to assume the function of the court is completely without merit. It is well established that the trial referees "[have no] power to render a judgment," Seal Audio, Inc. v. Bozak, Inc., supra,199 Conn. 502, but they do have the right to "express their views on questions of law. Practice Book § 434; Practice Book § 546g; Seal Audio, Inc. v. Bozak, Inc., supra, 509-10."Rostenberg-Doern Co. v. Weiner, supra, 17 Conn. App. 299.
"The [plaintiff] implicitly assumes that an attorney state referee performs the same function as a judge, but this assumption is wholly unfounded. Subdivision (4) of § 52-434
(a)[9] does not vest such a referee with the authority to exercise the powers of a court, which is given only to state constitutional referees on matters referred to them by CT Page 6727 subdivision (1) as well as by article fifth, § 6 of the constitution." Seal Audio, Inc. v. Bozak, Inc., supra, 199 Conn. 502. "The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney trial referee], like those of the parties, though they may be helpful, carry no weight not justified by their soundness as viewed by the court that renders judgment." Id., 510.
The referee stated her legal opinion as to whether the plaintiffs were able to prove the claims alleged in the complaint. This court, however, recognizes that the legal opinions of the referee are not binding upon it and carry no weight not justified by their soundness. It is the duty of the court to make its own independent legal conclusions as to whether the plaintiffs were able to prove their claims based on the evidence.
 B
"The basic purpose of objecting to the acceptance of a trial referee's report is to demonstrate that the conclusions of fact stated within it are not supported by the subordinate facts, or that the referee erred in rulings on evidence or in other rulings. Practice Book § 440; Dorsen v. Kay, 13 Conn. App. 645,649, 538 A.2d 1080 (1988)." Rowan Construction Corp. v.Hassane, 17 Conn. App. 71, 78-79, 549 A.2d 1085, aff'd, 213 Conn. 337,567 A.2d (1990).
"A failure to file valid exceptions constitutes in effect a waiver of the right to `attack the subordinate factual findings contained in the report.' See Bernard v. Gershman, supra,18 Conn. App. 655." McHugh Const. v. Hammermill Business Corp.,
Superior Court, judicial district of Stamford/Norwalk at Stamford (March 8, 1995, Lewis, J.) "Since the trial court must accept the referee's findings of fact in the absence of valid exceptions to the report, its task is limited to determining whether the legal conclusions `are legally and logically correct and whether they find support in the facts found by the referee.' Bernard v.Gershman, supra, 18 Conn. App. 656; Practice Book § 440." Id.
FIRST COUNT
The referee found that a contract was formed and reduced to writing by the document dated July 23, 1985. The parties to the contract were Roger Clark and Robert J. Nichols. There were no CT Page 6728 other parties to this contract. Robert J. Nichols anticipatorily breached the contract. As of August 15, 1985, Roger Clark had no further obligations under the contract due to the anticipatory breach by Robert J. Nichols. The actions and words of Robert J. Nichols were clear and unequivocal manifestations of his inability to close. According to the terms of the contract, Roger Clark was entitled to retain the $20,000 paid as liquidated damages upon the breach by Robert J. Nichols.
According to the referee, the defendant, Thomas Winschel, was not a party to the contract to purchase signed by the plaintiff and the defendant, Clark. "In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. Hoffman v. Fidelity Casualty Co., 125 Conn. 440, 443-44,6 A.2d 357 (1939); Zahornacky v. Edward Chevrolet, Inc.,37 Conn. Sup. 751, 753-54, 436 A.2d 47 (1981); see also Bridgeport PipeEngineering Co. v. DeMatteo Construction Co., 159 Conn. 242, 249,268 A.2d 391 (1970)." Fortier v. Newington Group, Inc., 30 Conn. App. 505,510, 620 A.2d 1321, cert. denied, 225 Conn. 922,625 A.2d 823 (1993). "It is true . . . that in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts §§ 1(c), 15, 19 (Tent. Dr. 1964); 1 Williston, Contracts (1957) §§ 18, 22; see also Hoffman v. Fidelity Casualty Co., [supra, 125 Conn. 444];Clark v. Diefendorf, 109 Conn. 507, 510, 147 A. 33 (1929); and the identities of the contracting parties must be reasonably certain." Ubysz v. DiPietro, 185 Conn. 47, 51, 440 A.2d 830
(1981).
"A contract may be written or oral, express or implied from the conduct of the parties." Pacitti Construction v. TammsIndustries, Superior Court, judicial district of Middlesex, Docket No. 65943 September 29, 1994, Walsh, J.). "A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. Collins v. Lewis, 111 Conn. 299, 304,149 A. 668; Skelly v. Bristol Savings Bank, 63 Conn. 83, 87,26 A. 474; 3 Corbin Contracts, p. 169; 12 Am.Jur. 499." Corriveau v.Jenkins Bros., 144 Conn. 383, 387, 132 A.2d 67 (1957). "`A contract implied in fact, like an express contract, depends on actual agreement.'" D'Ulisse-Cupo v. Board of Directors of NotreDame High School, 202 Conn. 206, 211 n. 2, 520 A.2d 217 (1987);Therrien v. Safeguard Mfg. Co., 180 Conn. 91, 94, 429 A.2d 808
(1980); Brighenti v. New Britain Shirt Corporation, 167 Conn. 403, CT Page 6729 406, 356 A.2d 181 (1974); Corriveau v. Jenkins Bros.,
[supra, 144 Conn. 387]." Coelho v. Posi-Seal International, Inc.,208 Conn. 106, 111, 544 A.2d 170 (1988). "`It is the plaintiff's burden to prove, by a preponderance of the evidence, that the [defendant, Thomas Winschel,] had agreed by either words or deeds to recognize and undertake a contractual commitment'" to sell his share of Royal/Grimm Davis to the plaintiff. Barry v.Posi-Seal International, Inc., 36 Conn. App. 1, 23, 647 A.2d 1031
(1994), remanded for further consideration, 235 Conn. 901,664 A.2d 1124 (1995), quoting Christensen v. Bic Corp., 18 Conn. App. 451,454, 558 A.2d 273 (1989).
The contract to purchase was signed only by the defendant, Roger Clark, and the plaintiff, Robert Nichols. The defendant, Thomas Winschel, never signed the contract. Based on this evidence, the plaintiff certainly did not have an express contract with the defendant, Thomas Winschel. Further, the referee did not find any facts from which the court could discern the existence of an implied contract between the plaintiff and the defendant, Thomas Winschel. For these reasons the court finds that the defendant, Thomas Winschel, was not a party to the contract between the plaintiff, Robert Nichols, and the defendant, Clark.
The referee also concluded that the plaintiff anticipatorily breached the contract; consequently, the defendant Clark, as of August 15, 1985, had no further obligations under the contract. "Anticipatory breach of contract occurs when a party communicates a definite and unequivocal manifestation of intent not to render the promised performance at the contractually agreed upon time.Martin v. Kavanewsky, 157 Conn. 514, 518-19, 255 A.2d 619 (1969);Yaffe v. Glens Falls Indemnity Co., 115 Conn. 375, 378,161 A. 521 (1932); 4 Corbin, Contracts (Rev. Ed 1964) 973, p. 905."Koski v. Eyles, 37 Conn. Sup. 861, 862, 440 A.2d 861 (App. Sess. 1981). "It has also long been accepted that an anticipatory breach discharges any remaining duties of the nonbreaching party, and once there has been a repudiation that party is no longer required to hold himself ready, willing and able to perform.Martin v. Kavanewsky, supra." McKenna v. Woods, 21 Conn. App. 528,534, 574 A.2d 836 (1990). "The manifestation of intent not to render the agreed upon performance may be either verbal or nonverbal; White v. Finch, 3 Conn. Cir. Ct. 138, 142, 209 A.2d 199 (1964); and is largely a factual determination in each instance." Koski v. Eyles, supra, 37 Conn. Sup. 862. CT Page 6730
The referee found that the plaintiff, Nichols, did not notify the defendant, Clark, that he had sufficient funds in escrow to close the transaction prior to the scheduled date for closing, August 15, 1985. Notification to the defendant, Clark, that there were sufficient funds in escrow to accomplish a closing, was a requirement of the contract. Moreover, the plaintiff told the defendant, Clark, several times that he did not have the $180,000 needed to close. Only a few days before the scheduled closing, the plaintiff informed the defendant, Clark, that there was not enough money to close, and that they, the investors in the Royal/Davis Holding Corporation, were lacking $60,000 because some of the investors had backed out. The plaintiff also could not provide the defendant, Clark, with an estimate of when they were going to have sufficient funds to close the transaction.
The actions and statements of the plaintiff show a definite and unequivocal manifestation of his inability to produce the remaining $180,000 by the scheduled closing date. For these reasons, the plaintiff did anticipatorily breach the contract with the defendant, Clark. Consequently, any remaining duties to be performed by the defendant under the contract were discharged.
According to the terms of the contract, the defendant was entitled to retain the $20,000 paid by the plaintiff for the purchase of Royal/Grimm Davis as liquidated damages upon the breach by the plaintiff.[10] Since the plaintiff anticipatorily breached the contract with the defendant, the defendant was entitled to keep the $20,000 paid by the plaintiff as liquidated damages.
Count Two
In count two of his amended complaint, the plaintiffs allege that the defendant, Clark, breached an oral contract. The referee found that the oral contract to purchase the firm of Royal/Grimm Davis, Inc. between the defendant, Clark, and the plaintiff was reduced to writing on July 23, 1985. As discussed above, the plaintiff breached that written contract. For this reason, the court adopts the conclusions of the first count as to the second count.
Third Count
In count three of the amended complaint, the plaintiffs allege that they relied on the promises, agreements and CT Page 6731 representations made by the defendants to his detriment and loss. "Under the law of contract, a promise is generally not enforceable unless it is supported by consideration. E. Farnsworth, Contracts (1982) § 2.9, p. 89; A. Corbin, Contracts (1963) § 193, p. 188." D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, 202 Conn. 206, 213,520 A.2d 217 (1987). "When detrimental reliance is demonstrated by the promisee's action or forbearance, the detrimental reliance satisfies the necessity of consideration required for a valid contract. Finley v. Aetna Life and Gas, Co., 5 Conn. App. 394,415, 499 A.2d 64, [reversed on other grounds, 202 Conn. 190,520 A.2d 208 (1987)]." Cornelio v. New Hampshire Insurance Company,
Superior Court, judicial district of Hartford/New Britain at Hartford (April 3, 1995, Freed, J.). "`Estoppel require[s] proof of misleading conduct by one party resulting in detrimental reliance by the other. Latimer Point Management Corporation v.Anderson, 1 Conn. App. 310, 313, 471 A.2d 670, (1984).' Hunt v.Friedman, 6 Conn. App. 720, 722, 507 A.2d 498 (1986)." (Emphasis added; internal quotation marks omitted.) Edart Truck RentalCorporation v. B. Swirsky Co., 23 Conn. App. 137, 141,579 A.2d 133 (1990).
The plaintiff, Nichols, and the defendant, Clark, had an express contract which spelled out the obligations and duties of both parties. Furthermore, it was the plaintiff, Nichols, who anticipatorily breached the contract, thereby, discharging the defendant's remaining duties of performance under the contract. Also, there is nothing in the referee's findings that would indicate that the defendant, Clark, engaged in misleading conduct. For these reasons, the court must deny the plaintiffs' claim of detrimental reliance.
Count Four
The plaintiffs in count four of the complaint allege that the defendants acted in an improper and fraudulent manner, with a willful, wanton and knowing disregard for the plaintiffs, causing the plaintiffs to suffer losses and damages.
"`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.' Alexander v. Church,53 Conn. 561, 562, 4 A. 103 (1886), quoting T. Cooley, Torts p. 474." (Internal quotation marks omitted.) Billington v.Billington, 220 Conn. 212, 217, 595 A.2d 1377 (1991). "The CT Page 6732 elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Gerard,196 Conn. 584, 587, 494 A.2d 1199 (1985); Miller v. Appleby,183 Conn. 51, 54-55, 438 A.2d 811 (1981)." Billington v. Billington,
supra, 220 Conn. 217. "Fraud, of course, is not to be presumed and must be strictly proven by clear, precise and unequivocal evidence." (Internal quotation marks omitted.) Deluca v. C. W.Blakeslee Sons, Inc., 174 Conn. 535, 546, 391 A.2d 170.
The referee did not find any facts from which the court can conclude that the defendant, Clark, deceived the plaintiffs in any manner or that he made any false representations to the plaintiffs. Because the plaintiffs have failed to satisfy the elements necessary to prove fraud, the court must deny the plaintiffs' claim.
Count Five
In count five of the amended complaint, the plaintiffs allege that the defendants made false representations to the plaintiffs upon which they relied to their detriment.
"`This court has long recognized liability for negligent misrepresentation. We have held that even an innocent misrepresentation of fact may be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth. Richard v. A. Waldman Sons, Inc., 155 Conn. 343,346, 232 A.2d 307 (1967); see also J. Frederick Scholes Agency v.Mitchell, 191 Conn. 353, 359, 464 A.2d 795 (1983); Johnson v.Healy, 176 Conn. 97, 102, 405 A.2d 54 (1978); Warman v. Delaney,148 Conn. 469, 473, 172 A.2d 188 (1961); Boucher v. Valus,
6 Conn. Cir. Ct. 661, 665-66, 298 A.2d 238 (1972). The governing principles are set forth, in similar terms in § 552 of the Restatement (Second) of Torts (1977): `One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' See also Ultramares Corporationv. Touche, 255 N.Y. 170, 174 N.E. 441 (1931); Glanzer v. Shepard,233 N.Y. 236, 135 N.E. 275 (1922); W. Prosser W.P. Keeton, CT Page 6733 [supra,] § 107, p. 745." (Internal quotation marks omitted.)D'Ulisse-Cupo v. Board of Directors of Notre Dame High School,202 Conn. 206, 217-18, 520 A.2d 217 (1987).'" (Internal quotation marks omitted.) Williams Ford, Inc. v. Hartford Courant Co.,232 Conn. 559, 575, 576, 657 A.2d 212 (1995).
There is no evidence that the defendants provided any false information to the plaintiffs in the course of their business transaction. Consequently, the court must deny the plaintiffs' claim of negligent misrepresentation.