[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Richard Thivia, brings this breach of contract action against the defendant Town of East Hartford claiming to be owed 12.2% of the "greens fees" which had been increased with a "capital improvement" fee after the town had renewed the plaintiff's contract.
The plaintiff had been a golf professional at the East Hartford golf course since the 1970s. In the early years the employment agreements were verbal. The first written one was in the late 1980s. Under both the verbal and written agreements the plaintiff had no salary, but was paid with 100% pro shop sales, 100% of the fees from lessons, 12.2% of the greens fees, 100% of the golf cart rental income up to $100,000, and the town to receive 10% of rental income above $100,000, 100% of the pull cart revenue and retrieval rights of the pond on the golf course.
The contract which is the subject of this action was to go into effect on June 27, 1997. The parties had been operating under an extension of the previous agreement since March 27, 1997 which expired on May 27, 1997, and continued that arrangement until the June 27, 1997 contract was executed. The terms of this agreement were to be in effect for a period of three years beginning on April 1, 1997, and ending on March 31, 2000.
Roger Moss, the Director of Parks and Recreations, told the plaintiff that he had proposed capital improvement of the golf course which would come from a special levy of $2.00 on all patrons using the course. Two months later the plaintiff's contract was renewed retroactive to April 1997. No negotiations took place between the plaintiff and the town of East Hartford as to its terms. The terms were the same as the terms of the previous agreement.
At the January 27, 1998, Town Council meeting the proposal was made for capital improvement of the golf course to be covered by an increase in the golf course fees of $2.00. An amendment to that proposal was that such additional fees were to be dedicated to a special account for golf CT Page 3229 course improvements. The motion as amended was carried unanimously. Subsequently the golf course fees were increased by $2.00. Though these were posted as increased greens fees, the payment register slip which the patron was given separated out the $2.00 capital improvement levy from the greens fees.
The capital improvement levy was accounted for separately in the town's financial records. At no time did the plaintiff tell Roger Moss or Walsh, the Financial Director, that he expected to have the town pay him 12.2% of the $2.00 capital improvement levy. The town was put on notice of this claim when it received, on April 20, 1998, a letter from Attorney Roberto in which the town was advised of the plaintiff's expectations.
The first paragraph of Attorney Roberto's letter reads as follows:
I recently have been advised by Mr. Thivia that the town has added a $2.00 increase to the greens fees and has chosen, for reasons of its own to label it a golf course improvement surcharge in order to avoid paying him a 12.2% fee on greens fees collected pursuant to his contract.
The plaintiff had been told before he submitted the renewal of his 1997 contract that the $2.00 would be levied for the specific purpose of improving the golf course. The fact that this $2.00 fee was incorporated into the posted golf course fees does not obviate the action of the town council on January 27, 1998. A formal vote was taken by the town council on a proposal to add $2.00 to the cost of using the golf course, this money to be set aside in a special fund.
To allow the plaintiff to claim that he was entitled to 12.2% of the $2.00 improvement fee would be to add a new term to the contract, one which involves additional remuneration without one word exchanged between the parties to the contract. ". . . the court will not make for them a contract which they themselves did not make." Hoffman v. Fidelity Casualty Co., 125 Conn. 440, 444 (1939).
It cannot be said that there was a meeting of the minds as to this additional remuneration. "It is a basic principal of contract law that in order to form a binding contract there must be mutual assent or a meeting of the minds." Zahornacky v. Edward Chevrolet, Inc., 37 Conn. Sup. 751,753 (1981). The mere fact that the town chose this method of levying its course improvement fee does not mean that the town intended to include the $2.00 as green fees against which the 12.2% was computed. Prior to executing the written contract, the plaintiff knew that the town had no intention of giving him a percentage of the $2.00 fee. It was only when the decision was made to designate the $2.00 as part of the greens fees CT Page 3230 that the plaintiff made his claim through his attorney. From the fact that the town chose this method of collecting the course improvement fee of $2.00 it does not follow that the plaintiff has an automatic claim of 12.2% against the $2.00.
The contract entered into between the plaintiff and the town calls for the plaintiff being entitled to 12.2% of greens fees and only greens fees, not the greens fees augmented by the course improvement fee. The receipt given to the patron of the club breaks the figure down to greens fees and a $2.00 course improvement fee. The monthly report lists separately the capital improvement fee. "Where the parties appear to have agreed to the terms of the contract, but circumstances disclose a latent ambiguity in the meaning of an essential word, this ambiguity going to the essence of the supposed contract, the result is that there is no contract. 17 Am.Jur.2d, Contracts §§ 18, 22." Zahornacky, supra, at 753-54. "To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties." (Citation omitted.) BridgeportPipe Engineering Co. v. De Matteo Construction Co., 159 Conn. 242, 249
(1970).
The plaintiff has claimed that the receipt breakdown was an attempt to deprive the plaintiff of what was rightfully his. If so, why did he not press the claim being made by him. After the April 20, 1998, letter from his attorney was sent, the plaintiff continued to be paid the 12.2% greens fees without adjustment for the $2.00 course improvement fee through the balance of his contract period. In fact in January 2000, he told his attorney not to go forward. At this point his April 1997, contract had 2-1/2 months remaining.
The plaintiff knew prior to executing the April 1997 contract that the town had no intention of giving him a percentage of the course improvement fee. His acquiescence in the town's plan is evidenced by his failure to obtain a percentage of the new fee or to even raise the issue at all until the town's decision to include the capital improvement fee with the greens fees. Both the receipts given the golfers and the monthly receipts separated the capital improvement fees from the greens fees.
For the reasons stated judgment may enter for the defendant Town of East Hartford.
Hennessey, J. CT Page 3231